CLOPTON, J.,
on the re-hearing. I concurred in granting the re-hearing of this case, because, although the question in it arises under the Act of 1785, it has never received the decision of the Court of Appeals, and as it was decided here by a bare majority of the Court, it could not be considered as free from all doubt. I was, therefore, willing to review my own reasoning, that if error existed in the conclusion to which it led me, I might detect it. With this view I have examined the authorities referred to in the second argument, and, *having considered them in connection with the discussion on the first hearing, I am unable to perceive any fallacy in the reasoning which conducted me to the conclusion I adopted. Indeed, subsequent reflection has fortified that conclusion.
Having already discussed the question at some length, I do not deem it necessary to add more than a few remarks.
It is conceded that the posthumous child is entitled to “succeed to the same portion of the father’s estate, as such child would have been entitled to, if the father had died intestate,” and I think it must also be admitted, that the value of advancements made by the father to one of his children, *593 canrot, in any view or for any purpose, be considered a part of the father’s estate, until, by such child’s choosing- “to come into the distribution with the other persons entitled, the advancements shall have been brought into hotchpot with the distributable surplus.’ And when also brought in, what is the effect, and what the purpose intended by the law? The effect is not only to add the value of the advancement to the estate descended from the father, but to entitle the child bringing it in, to an equal distribution of the augmented amount with the other persons entitled. This, it would seem, he is clearly entitled to, if he comes in; and if he does not so choose, he can never be entitled to any other portion of the father’s estate, for the plain mandate of the law is, that he shall bring in the advancement and receive an equal distributive share of the whole; or, contenting himself with the advancement made to him, he shall receive no part of the residue. Here it may not be inappropriate to remark, that the language of the law is, “such advancement shall be brought into hotchpot with the distributable surplus.” This phrase, descriptive of that to which the advancement is to be added, seems to refer to and to include, only that which passed by operation of law to those entitled, to be ■disposed of by distribution among them, according to law. But in this case, *the will of the father disposed of the entire estate he possessed at the time of his death; there was no such “distributable surplus.” All passed by the will, and nothing by operation of law merely, except that the law makes provision for the posthumous child, and the extent of that provision is the subject of enquiry.
We have already seen that the doctrine of hotchpot did not apply to cases of partial intestacy, and if it be true that, in a case to which the doctrine of hotchpot applies, the child who has received án advancement must either bring it in, or be excluded from the distribution; then that doctrine cannot be applicable to the case of a will, where the estate passes by the will, in devises and legacies, and not by operation of law in distributive shares; for it has not been contended that the birth of a posthumous child revokes the will (where there are children), and I think it cannot be successfully contended, that such birth has any other effect, than to abate the devises and legacies proportionably, to raise the portion of the posthumous child, whatever that may be; the express language of the law being, “towards raising which portion, the devisees and legatees shall contribute proportionably out of the parts devised and bequeathed to them by the same will and testament” — language which imports that the devises and legacies shall be abated proportionably to raise the whole portion, and not a part of it only. Suppose a case in which one child has received advancements, and is also a legatee in the will of the father, with three others, (the father having four children at the time of his death, leaving his wife enciente at the time of his death,) and a posthumous child is born.
If to this case the law of hotchpot applies, that law gives to the advanced legatee the right to bring in his advancement or not, a right to be regulated and controlled bj' his mere volition ; and if, in the exercise of this right, he determines to bring in his advancement, then the portion of the posthumous child would be a fifth part, or twenty per cent, of the whole estate descended *from the father, augmented by the advancement brought in, towards raising which the un-advanced legatees would contribute one-fifth part, or twenty per cent, of their respective legacies; and the advanced legatee would contribute one-fifth part, or twenty per cent, of his legacy, and of the advancement which he had brought in. But if the advanced child chooses not to bring in his advancement, then, upon the principle of hotchpot, he would be excluded from the computation in ascertaining the aliquot parts, and the portion of the posthumous child would be a fourth part, or twenty-five per cent, of the. property disposed of by the will (but not increased by the advancement), to be raised proportion-ably from the devises and legacies in the will, and this would require a contribution from each legacy of one-fourth part, or twenty-five per cent. of the amount (whether the legacies were equal or not), including the legacy to the advanced child; thus imposing on the respective legacies of the unadvanced legatees, a contribution of twenty-five instead of twenty per cent., and subjecting the legatees to the loss of five per cent, of their respective legacies, by excluding the advanced child from the computation. When, in either of these cases, the portion of the posthumous child shall have been raised, what disposition is to be made, in the first, of the residue of the legacy to the advanced child, and of the advancement which he had brought in: or, in the second, of the remaining three-fourths of the legacy to the advanced child? No part of this residue, in either case, can belong to the posthumous child, who has received one full equal share of the whole estate, upon the principles supposed to be applicable to each case, and it cannot belong to the other legatees, who can only claim their legacies under the will, subject to such proportionable contribution as was (in either of the supposed cases) required towards raising the portion of the posthumous child; for, as the will is not revoked, it must operate, as between the legatees, in full force, except as to the contribution necessary towards raising *the portion of the posthumous child. If I am right in the opinion, that neither the posthumous child nor the other legatees are entitled to any part of this residue, in either case, it must, of necessity,' belong to the legatee who had been advanced, and that legatee will be entitled to come in and take it. And the inevitable effect would *594 be, to enable the advanced legatee to keep his whole advancement, by refusing to bring it in; and also' to take his legacy, subject only to an additionál contribution of five per cent. ; an increase, also, imposed upon the other legacies. As ' it is not a principle of the law of hotchpot that a child who has received advancements, may refuse to bring them in, and, notwithstanding, be entitled to claim and receive some portion of the father’s estate, the doctrine; therefore, is not applicable, because the advanced legatee can neither be compelled to bring in his advancement, nor be excluded from all participation in the estate disposed of by the will; and, also, because it imposes an additional burthen upon the unadvianced legatees, and thus increases the inequalities (if any) made by the will. And there is no escape from this consequence.
The proposition that the law of hotchpot is applicable, necessarily implies, that the posthumous child will be entitled to a portion, greater in value, than if if is not applicable, which results must be produced in one of two ways: either by augmenting the fund to be divided, or diminishing the number of those among whom it is to be divided; but in whichever way the increment is made, it must bq. taken '.from some source, thé burthen mus't,.be-tjirown upon some one or more; and if the portion of the posthumous child be enlarged, by diminishing the number of those among whom the division is'to be made, then the unkdvahced legatees must be subjected to a larger contribution and consequent loss, or the whole of the increase must be thrown upon the advanced legatee, to their - exoneration. For such a construction, I do not think the law furnishes any warrant; ' indeed, it seems a plain violation of the principle fixed *by the law, that “theleg-ateeis shall' contribute proportionably out of.the parts devised and bequeathed to them,” towards raising the portion of the pos.thumous child.
TYLER, J.
The only- question in this case is, whether or not the statutory provision respecting advancements applies to cases of testacy, in the event of’the birth of a posthumous child, unprovided for ' by settlement, and neither provided for nor disinherited, but only, pretermitted. This provision is limited in terms, by the statute which creates it, to the case of “a person dying intestate;” and it provides, that where any of the children of a person dying intestate shall have received from such intestate any estate by way of advancement, and shall choose to come into partition and distribution of the estate •with the other parceners and distributees, such advancement shall be brought into hdtchpot' with the whole estate descended, and such party returning such advancement shall be entitled to his proper portion of the whole estate so' descended.
The object of this provision was, and its effect is, in the appropriate application of this principle, to produce equality in the partition and distribution of intestates’ estates. Equality, then, being the object of the law, it follows, necessarily, that whenever this provision is applicable, the party bringing in the advancement must come into- partition and distribution, and be entitled (in the case of a child) to an equal portion of the estate with the rest of the children. When, therefore, by reason of a will the principle of equality is abrogated, so that the party advanced, by returning the advancement, cannot come into partition and distribution with parceners and distributees, and cannot take his equal portion of the estate with the rest of the children, but is compelled to take what is left him by the will, be it little or much, on no principle of rea'son or justice, and certainly not by the terms of the statute, can he be called on to return the advancements as a condition precedent to his receiving his legacy.
*It is argued, however, that the statute providing for posthumous children applies this provision of the law, by necessary implication, to cases of testacy and the birth of a posthumous child. The language of that statute isas follows: “If a testator shall leave children born and his wife enciente, the posthumous child, if it be unprovided for by settlement, and be neither provided for nor- disinherited, but only pretermitted by the last will and testament, shall succeed to the same portion of the father’s estate as such child would have been entitled to if the father had died intestate; and for raising its portion the devisees and legatees shall contribute pro-portionably out of the parts devised and bequeathed to them.” In the cabe, then, of actual intestacy, the posthumous child comes into partition and distribution with the other parceners and distributees, with the law of hotchpot limiting and controlling the distribution of the intestate’s estate; and there being in such case no testamentary disposition of the property in the way of the law, it declares that as a condition precedent to the receipt by the advanced child of any part of the father’s estate, that as he shall add to the father’s estate the amount advanced, and, by so doing, shall come into equal partition and distribution, not only of the father’s estate, but of the amount of advancement returned. But in cases of testacy, and the birth of a posthumous child, the posthumous child itself not being able to come into partition, cannot call on any other child to act on that principle. • The posthumous child’s portion of the father’s estate is ascertained by treating the father as having died intestate, and when ascertained, is paid by contribution ; it being impossible to apply the provision in reference to advancements in cases of testacy, without setting aside the will in toto. Eor, in the case of a will, there are not parceners and distributees to come into hotchpot, but devisees and legatees; and as the posthumous child, in case of a will, never comes itself into partition, it can never call on any one else to come *595 in. To illustrate this view, *let us take the case of a testator who has three children born, A, B and C. He advances A $1,000 and B $1,000. He dies possessed of an estate of $20,000, and by his will he disposes of that estate as follows: to A $2,000, to B $2,000, and to C $16,000. A posthumous child is born. According' to my view of the law, the testator is to be considered as having died intestate as to the $20,000, which is all his estate, and the posthumous child succeeds to a child’s portion of the father’s estate, which is $5,000, or one-fourth of $20,000, there being four children; and its portion is raised by A contributing $500, B $500, and C $4,000. Heaving A $1,500, B $1,500, and C $12,000. How, now, is it possible to apply the doctrine of hotchpot to this case? If the posthumous child says to A and B, you must return your advancements and come into hotchpot before you can receive }7our legacy of $2,000, the answer to the demand is, ‘ ‘there is nobody to come into hotchpot with.” The posthumous child invites A and B into hotchpot, but with whom? He can’t come in; his portion is made up by contribution; C is a devisee entitled to $12,000 after contribution, and there is no one else. Can the posthumous child, then, either by the terms of the statute, or consistently with fair dealing, ask A and B to bring in their advancements for the purpose of increasing the fund, in order that he shall succeed, not only to such portion of the father’s estate as if he had died intestate, to be made up out of A, B and C’s legacies, but also to a portion of A and B’s advancement, when his portion will be more than double A and B’s legacy and advancement added together, and when, after they are brought into hotchpot, he is to get more than he is entitled to, and the advanced children less? Surely this cannot be, as it is argued, the operation of the doctrine of hotchpot. If it is, I am certainly a stranger to it.
I am, therefore, for affirming the decree with costs. The amended bill brought parties before the court who were not liable to the demand of the plaintiff, and it *was property dismissed. There has been no action on the original bill, and there is, therefore, nothing before this court in reference to it.
GILMER, J.
The original bill in this cause was filed by Ann Macon, to recover from the legatees and devisees of John Macon, deceased, her share in his estate, she being a pretermitted posthumous child. The testator, in his life-time, had made advancements to his daughters Catharine Miller and Martha Miller, of which no mention is made in the original bill. The plaintiff afterwards married Daniel A. Wilson, and he and said Ann filed an amended and supplemental bill, the object of which was to make new parties, and to have an account taken of said advancements, in order to ascertain the share of said Ann in her father’s estate. Answers were filed to | the original and amended bills, and Chancellor Taylor, on the hearing, dismissed the amended bill, being of opinion, that the plaintiffs were not entitled to an account of the advancements.
The only question now submitted to this court is, Whether or not the Chancellor erred in that decree? And that depends on the construction to be given to the statute, providing for pretermitted posthumous children, which is in these words: “When a testator shall leave children born and his wife enciente, the posthumous child or children, if it be unprovided for by settlement,, and be neither provided for nor disinherited, but only pretermitted by the last will and testament, shall succeed to the samé portion of the father’s estate as such child would have been entitled to, if the father had died intestate; toward raising which portion, the devisees and legatees shall contribute proportionably out of the parts devised and bequeathed to them by the same will and testament.”
If the Legislature had not pointed out any particular mode, of raising the portion of the posthumous child, and had merely provided that such child, should succeed to the same portion of the father’s estate, as if he had ’x'died intestate, it is conceived there would be little difficult}7 in deciding the question; for it would be hard to escape from the direct and positive mandate of the law. If a father dies intestate, having advanced his children in his life-time, and a posthumous child is born, that child must inevitably (as between it and the other children) inherit either the whole of the estate undisposed of by' the father in his life-time, or an equal portion of such estate, and the portions advanced to the other children brought into hotchpot with it. This is admitted by all. What, then, did the Legislature mean by providing that if the father left a will, his posthumous child should succeed to the same portion of his estate, as if he had died intestate? I answer, it meant to place such child in the same condition, to all intents and purposes, as if he had died intestate. But it is argued, that advancements made by the father, constitute no part of his estate, that the title, by the gifts from the father, is vested in the donees; and this is certainly true, as between the donor and donee.' But if the father, by his will, should dispose of one of these advancements, and make a devise or bequest to one child advanced, and that child should elect to claim under the will, no one will deny that he must submit to the disposition of the advancement made by the will, though he might have refused to take under the will and have retained his advancement. And in this case, it is admitted that the defendants might have retained their advancements, had they not claimed any part of the estate under the will of the testator; but-having done so, and having received a portion of the testator’s estate under the will, and thus, to this extent, disappointed the plaintiffs, they stand in the same predica *596 ment, as if the testator had died intestate, as to that part of his estate not disposed of by advancements, and they had elected to take their respective portions of it.
I am of opinion, that the testator, for the purpose of carrying out the legislative intent, should be regarded as having died intestate. It is true the Legislature, in *a case like this, has not declared that the will shall be revoked in terms, but as to the posthumous child, the will is wholly disregarded, and without this it could not get any portion of the estate. .
The Chancellor seems to have relied much upon the ground, that the plaintiffs could not compel the defendants to bring their advancements into hotchpot. But the true question in this case is, not whether the plaintiffs could have compelled them originally to do so, but whether the court will now compel them, after they have elected to claim their portions of the estate devised and bequeathed by the will, and have actually received them. It is begging the question to say, that the property advanced by the father to his children is no part of his estate. In case of intestacy, if the children advanced bring'into hotchpot their advancements, they are indiscriminately mixed with the estate of the intestate, and all divided among his heirs and distributees; the whole is divided as his estate, according to the law of descents and distributions. And if this be so, why may not the advancements be considered in the same light in this case? In either case, if the children advanced can be compelled to bring them into the division, they then become alike, a portion of the estate of the father, and the only title on which the posthumous child can stand, is that by descent, to his distributable share of his father’s estate. I do not mean to say, that the property advanced is in specie brought into hotchpot, but the value of it, and to that extent the dividend is increased, and under the law divided as the father’s estate.
But it is argued, that if all this be true, the last part of the sentence controls the first part, and points out the fund, and the only fund, from which the portion of the posthumous child shall be raised. Suppose, for the sake of argument, this be admitted. There can be no doubt that the words “which portion,” in the latter part of the sentence, refer to the portion described and designated in the first part, and that is the same portion to which the child would be entitled in case of intestacy; *and if the advancements in case of intestacy are to be considered as part of the intestate’s estate, for the purpose of making up the portion of the posthumous child, it is difficult to perceive why they may not be so considered for effecting a similar purpose in a case like this.
It does not necessarily follow, that advancements are excluded, because the dev-isees and legatees are to contribute ratably out of their devises and bequests. This : may be done, and the advancements may still be accounted for.
I am confirmed in this view of the construction of the statute, by the belief, that it would do justice to a class which the Legislature (for good reasons) has taken under its protection, and would secure to them, such portions of their inheritance, as just fathers would desire they should enjoy; and I cannot believe that a just Leg- . islature, or a just parent, would desire that a pretermitted posthumous ' child, should share equally, with nine brothers and sisters, all of whom had received an equal tenth part of their father’s estate, the remaining tenth only.
There is no class of cases, in which the courts in England and in this country, have gone further than in giving to wills a liberal construction, for the purpose of carrying out the intention of the testator. Words, and even sentences, are stricken out and disregarded, or interpolated, as may be necessary, for carrying out this cardinal rule of construction. It is always presumed (in the absence of all proof to the contrary) that a parent desires his children to inherit equal portions of his property; and hence, when one dies intestate, the law disposes of his property equally among them. So, if he dies intestate, a preter-mitted posthumous child will be entitled, in case he has made advancements to other children, either to all the remainder, or to an equal share of that, and the advancements brought into hotchpot. Why was this provision made? The answer is obvious: to put all the children on an equality, as far as *is, practicable; because it is not just or fair, for one : who has already got a share of a common fund, to which he had no better right, and as to which he stood on no better footing, than his brothers and sisters, to retain all that he has, and to take an equal share of the remainder. By doing so, he may produce inequality; nothing more. And is it to be presumed, that the Legislature which passed these laws, and for the purpose above mentioned, made advancements a part of the estate of an intestate, intended that they should not be so considered in a case like this, in which a will was made by a testator, in total ignorance of the condition of his wife at the time of his death? In the case of Callaway, &c. v. Langhorne and wife, 4 Rand. 181, the Court of Appeals decided that a sum of money which the testator in that case, had bequeathed to one of his children, should be taken into the general estimate, although not embraced by the language of the will, because the court was satisfied, that equality was intended by the testator, though he did not so express himself as to include the money. And I can see no good reason why advancements in this case, may not be considered a part of the testator’s estate, as to the pretermitted posthumous child, to produce equality, and to carry out what I believe to have been the intention of the Legislature; for whatever may be the effect, in other cases which *597 may be supposed, there can be little doubt this is one, in which inequality will be produced, by the construction contended for by the appellees. For these reasons, I am for reversing the decree.